# United States Court of Appeals
## For the First Circuit

No. 24-1563

UNITED STATES,

Appellee,

v.

ALAN HOWELL PARROT,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

---

Before
Barron, Chief Judge,
Breyer,[*] Associate Justice,
and Kayatta, Circuit Judge.

---

Kurt C. Peterson, with whom Walter F. McKee, Matthew D. Morgan, and McKee Morgan, LLC, P.A., were on brief, for appellant.
Brian S. Kleinbord, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

---

March 21, 2025

---

[*] Hon. Stephen Breyer, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BREYER, Associate Justice**.  A federal statute, 18 U.S.C. § 111, makes it unlawful to "forcibly assault[]" a federal officer. The defendant in this case, Alan Parrot, concedes that he "pushed" an FBI agent with his foot when she tried to enter his home.  He also concedes that he knew, at the time of the altercation, that the agent was a federal officer.  But he insists that he did not know that the officer had a search warrant to enter his home.  He accordingly argues that his conviction was improper because the jury should have been instructed that his ignorance of that fact made a difference.

There may be situations in which a person's lack of knowledge about facts in the world makes a conviction under § 111 improper -- even where the assailant is aware that his victim is a federal officer.  Cf. United States v. Feola, 420 U.S. 671, 686 (1975).  But, in our view, the instructions to which Parrot points on appeal do not speak to that kind of factual ignorance.  We consequently affirm his conviction.

### I.

The record indicates that the relevant facts are the following: One morning three FBI agents showed up at Parrot's house.  They were there to execute a search warrant.  The encounter got off to a good start.  Parrot came to his front door, the officers displayed their credentials, and they talked for over an hour.  But Parrot kept goats on the property; the goats started

- 2 -

to nibble on the officers' pants, ankles, and bags; and the officers consequently asked Parrot if they could talk to him behind the house, where there were no goats. Parrot agreed, and they all moved to the rear of the residence. At this point, Parrot was standing inside his house while the officers stood on steps outside. Between them was an open sliding glass door.

Matters then took a turn for the worse. After about fifteen minutes, the conversation shifted to "issues related to the search warrant." One of the officers told Parrot that he had legal paperwork he wanted to show him -- referring, the officer testified, to the search warrant he had brought with him. Parrot began to appear upset. He told the officers that the conversation was over, and he tried to shut the sliding glass door. The officers did not want the conversation to end. In particular, they wanted to avoid Parrot barricading himself inside his house. So one of the officers -- Special Agent Angell -- reached into the house and grabbed Parrot's arm to prevent him from closing the door. Another stepped inside the doorframe to stop the door from closing.

During the ensuing scuffle Parrot kicked Special Agent Angell in the stomach -- or, as he testified, "pushed her with the flat of [his] foot" -- injuring her. The officers eventually removed Parrot from his house, arrested him, and executed their search warrant. The Government prosecuted Parrot for "forcibly

assault[ing]" a federal officer in violation of 18 U.S.C. § 111. After hearing the evidence, the jury returned a guilty verdict.

## II.

18 U.S.C. § 111 says that whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" a federal officer "while engaged in or on account of the performance of official duties" is guilty of a crime. Parrot does not dispute that he "pushed" Special Agent Angell "with the flat of [his] foot." And he concedes that he was aware at the time that she was a federal officer. But he nonetheless argues that his conviction was improper under § 111 because he was unaware that the officers had a warrant to search his home, and the jury was not instructed that such ignorance could make a difference.

## A.

First, Parrot argues that the judge should have given, but did not give, the jury an instruction that he proposed. That instruction said:

> In order to find the defendant guilty of Assault on a Federal Officer, you must find beyond a reasonable doubt that the defendant had the criminal intent to forcibly assault a Special Agent with the Federal Bureau of Investigation while in the performance of the agent's official duties.

> In determining whether the defendant acted with intent, you may consider the state of mind of the defendant in terms of whether the defendant knew the reason for the entry into his home by the Special Agent. If you find

- 4 -

that the defendant did not know the reason for the entry into his home, you may consider this in your determination of whether the defendant had the intent to resist entry into his home.

The instruction basically tells the jury that it can acquit Parrot if it finds that he did not know about the agent's warrant.

We will reverse a district court's refusal to give a requested instruction "only if the rejected charge was (a) substantively correct, (b) not substantially covered by other instructions, and (c) so essential to an important point in the trial that failure to give it seriously impaired the defendant's ability to defend himself." United States v. Denson, 689 F.3d 21, 25 (1st Cir. 2012). And we believe that Parrot's proposed instruction was not "substantively correct."

The Supreme Court has made clear that § 111 is a general intent statute. That means the statute requires only "an intent to assault" and "not an intent to assault a federal officer." Feola, 420 U.S. at 684. To repeat, the statute does not require specifically that "an assailant be aware that his victim is a federal officer." Id. It is as if a bank robber, after threatening the teller and taking the bank's money, turned himself in -- as his purpose was not to obtain money but to return the money while spending a cold winter in a warm prison. The robber has a general intent to take money through threat of force but he lacks a specific intent "permanently to deprive the bank of its

- 5 -

possession of the money." Carter v. United States, 530 U.S. 255, 268 (2000); see also 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e) (3d ed. 2024) (distinguishing "general" from "specific" intent). The Supreme Court has held that, where § 111 is at issue, a general intent is all that is necessary. And that being so, we believe that a defendant not only can violate the law without knowing he has assaulted a federal officer, but he can also violate that law when he knows he has assaulted a federal officer but does not know the more detailed legal specifics as to the officer's right to be in a certain place.

Parrot replies that, even were this true as a general matter, it is not always true in a specific case. Suppose the officer threatened the defendant, who thought (assume reasonably) that the officer was a renegade about to shoot him. Would the defendant not have a right to defend himself, say by interfering with the officer's efforts to seriously injure him? Something like this scenario may have been what the Supreme Court had in mind when it qualified its "general intent" language by saying that sometimes, e.g.,

> where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

<u>Feola</u>, 420 U.S. at 686.

Nothing in Parrot's proposed instruction, however, refers to circumstances where a defendant has made a significant and "honest mistake of fact." To the contrary, Parrot concedes that the instruction requires the Government to prove that the defendant knew that the assaulted "[o]fficer" was "in the performance" of her "official duties." To require that knowledge (on the part of one who knows he is assaulting a federal officer) is to transform § 111 from a crime requiring only proof of a general intent to a crime requiring proof of what would often be a very specific intent: namely, an intent to assault a federal officer in the course of performing his or her official duties. In our view, so to hold would be contrary to the Supreme Court's § 111 "general intent" case law. See <u>Carter</u>, 530 U.S. at 268 (recognizing that general intent crimes require only "that the defendant possessed knowledge with respect to the <u>actus reus</u> of the crime"); <u>see also</u> <u>Pierre</u> v. <u>Att'y Gen.</u>, 528 F.3d 180, 189 (3d Cir. 2008) ("Specific intent requires not simply the general intent to accomplish an act with no particular end in mind, but the additional deliberate and conscious purpose of accomplishing a specific and prohibited result."). We consequently cannot say that Parrot's proposed instruction was "substantively correct."

Parrot refers to other cases that he believes support his instruction. See, e.g., United States v. Hillsman, 522 F.2d 454, 458-60 (7th Cir. 1975); United States v. Perkins, 488 F.2d 652, 654-55 (1st Cir. 1973). But they all involve defendants who did not know the assaulted person was a "federal officer" -- knowledge that is conceded here. We conclude that the district court's rejection of Parrot's proposed instruction was not error.

**B.**

Parrot also argues that the trial court gave the jury an erroneous self-defense instruction. The instruction read:

> Mr. Parrot asserts that he acted in self-defense. It is a defense to the charge if, one, the defendant did not know that [Special Agent Angell] was a federal officer; two, that the defendant reasonably believed that use of force was necessary to defend one's self against an immediate use of unlawful force; and three, that the defendant used no more force than appeared reasonably necessary in the circumstances.

Parrot argues that this instruction was improper because it meant that the jury could not find that he acted in self-defense if he was aware that the person he assaulted was a federal officer, but that the officer used "excessive force."

Our brief but conclusive response is that Parrot did not raise this argument in the district court. Nor, in our view, is the instruction plain error. See, e.g., United States v. Facteau,

89 F.4th 1, 26-27 (1st Cir. 2023) (reviewing alleged instructional error for plain error where argument was not raised in district court).  Error is plain if "(1) [] an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id. (second alteration in original) (quoting United States v. Nieves-Meléndez, 58 F.4th 569, 579 (1st Cir. 2023)).  In a word, the record does not demonstrate excessive force.  And that was not Parrot's theory of the case in the court below.  Rather, he claimed that he feared an illegal entry into his home -- a different matter.  We cannot expect the judge on his own to have deduced from the arguments Parrot did make and the evidence that Parrot produced an error in respect to a matter that he did not argue.

## III.

For the foregoing reasons, we affirm Parrot's conviction.